Lowell S. JONES, Appellant,

v.

James D. BLUME, an individual, James D. Blume, P.C., and Blume & Stoddard, Appellees.

No. 05–05–00087–CV.

Court of Appeals of Texas, Dallas.

June 21, 2006.

Rehearing Overruled July 28, 2006.

Victor L. Hanson, John J. Diggins, John J. Diggins, P.C., Dallas, for Appellant.

Henry H. Robinson, Kelly, Hart & Hallman, P.C., Fort Worth, Jennifer S. Stoddard, James D. Blume, Joshua H. Northam, Kevin Wayne Vance, Blume & Stoddard, Dallas, Appellees.

Before Justices WHITTINGTON, WRIGHT, and O'NEILL.

## OPINION

Opinion by Justice O'NEILL.

Lowell S. Jones appeals a summary judgment rendered in favor of James D.

Blume, James D. Blume, P.C., and Blume & Stoddard (collectively "Blume"). In twelve points of error[1], Jones contends generally that the trial court erred in: (1) holding that his breach of contract claim was barred by the statute of limitations; (2) holding that Blume did not owe him a fiduciary duty; and (3) granting summary judgment on his claims for breach of duty under the disciplinary rules of professional conduct, conspiracy, constructive fraud, *quantum meruit,* and attorney's fees. We reverse and remand, in part, and affirm, in part, the trial court's judgment. We reverse the trial court's judgment on the breach of contract and attorney's fees claims and remand those claims to the trial court. In all other respects, we affirm the trial court's judgment.

## Background

In April 1990, attorneys Jones and Jerry Kelly entered into an agreement to represent Robert Means and others in a lawsuit against Philadelphia Life Insurance Company. The *Means* lawsuit became very involved and time consuming. As a consequence, Jones and Kelly asked Blume to help in the prosecution of the lawsuit. Blume agreed and, in November 1992, they entered into an agreement that: (1) if the case settled prior to trial, Jones, Kelly, and Blume would each receive thirty-three and one-third percent of any fee collected; (2) if the case went to trial, Blume would receive forty percent of any fee collected;

1. check to James D. Blume, P.C. $15,712.54 loan repayment from Jones
2. check to Blume & Stoddard $ 8,874.47 cost reimbursement
3. check to Blume & Stoddard $97,972.68 attorney's fees
4. check to Blume & Stoddard $40,000.00 appeal work

The following day, October 2, 1998, Blume issued two checks each to Jones and Kelly

(3) if the case was appealed, Blume would receive an additional flat fee of $40,000.00; and (4) the parties would share costs equally. The parties modified their agreement with respect to costs in June 1994. At that time, they agreed that Blume would pay all future costs and that costs would be reimbursed to the person incurring them prior to the division of attorney's fees. In exchange for advancing all future litigation costs, Blume received an additional one-half percent of Jones's and Kelly's shares of attorney's fees.

For a period of time after the parties entered into the fee sharing agreement, Jones shared office space and staff with Blume. Jones subsequently became ill and Blume covered some of Jones's expenses. Over the years, a dispute arose as to the amount Jones owed Blume. Jones and Blume agreed that they would resolve the issue when the *Means* lawsuit settled.

Following trial and appeal, the *Means* lawsuit settled for $500,000. On September 24, 1998, Blume received two checks totaling $500,000 from Philadelphia Life Insurance Company. After Means endorsed the checks, Blume deposited the checks into his trust account. Blume wrote a check for $250,000 from his IOLTA account on September 24, 1998 and gave it to Means.

On October 1, 1998, Blume issued the following four checks from the settlement proceeds:

for the following amounts:

Checks issued to Jones:

---

1. We note that the eleven issues listed under the heading "Issues Presented" *do not coincide with the twelve arguments raised in the* body of Jones's brief. We address the issues *as presented in the body of Jones's brief.*

1. $   747.78   cost reimbursement
2. $34,779.99   attorney's fees

Checks issued to Kelly:

1. $ 1,420.00   cost reimbursement
2. $50,492.54   attorney's fees

Jones received his two checks on October 3, 1998. Jones disputed the deduction of the $15,712.54 from his share of the attorney's fees. He did not cash either check. Jones filed this lawsuit against Blume on October 1, 2002. Both Blume and Jones filed motions for summary judgment. The trial court granted Blume's motion and rendered a take nothing judgment against Jones. This appeal timely followed.

## Standard of Review

The standard of review in summary judgment is well-established. Tex.R. Civ. P. 166(c); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 23 (Tex.1990). In reviewing a traditional motion for summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgm't Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). To prevail on summary judgment, a defendant as movant must either disprove at least one element of each of the plaintiff's theories of recovery or plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982).

A no-evidence motion for summary judgment places the burden on the nonmovant to present summary judgment evidence raising a genuine fact issue. *Espalin v. Children's Med. Ctr. of Dallas,* 27 S.W.3d 675, 683 (Tex.App.-Dallas 2000, no pet.). We review a no-evidence motion for sum-

mary judgment under the same legal sufficiency standard used to review a directed verdict. *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.,* 12 S.W.3d 827, 832–33 (Tex. App.-Dallas 2000, no pet.). Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *Id.* at 833.

When multiple grounds for summary judgment are raised and the trial court does not specify the ground or grounds relied upon for its ruling, the appellate court will affirm the summary judgment if any of the grounds advanced in the motion are meritorious. *Dow Chemical Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001).

## Timeliness

In his tenth point of error, Jones contends the trial court erred in granting Blume's motion for summary judgment on the ground that his lawsuit was barred by the statute of limitations. Jones contends his cause of action accrued when he received the two checks from Blume on October 3, 1998. Blume counters that the accrual date was September 24, 1998, the date he received the settlement checks from Philadelphia Life Insurance Company.

The limitations period for a breach of contract claim is four years. TEX. CIV. PRAC. & REM.CODE ANN. § 16.004 (Vernon 2002). The issue of when a cause of action accrues is a question of law for the court. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990). By moving for summary judgment on the affirmative defense of limitations, it is the defendant's burden to establish as a matter of law the date a cause of action accrues. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999).

A breach of contract claim accrues when the contract is breached. *Stine v. Stewart,* 80 S.W.3d 586, 592 (Tex. 2002). The contract is not breached until a wrongful act occurs. *See Anderson v. Cocheu,* 176 S.W.3d 685, 690 (Tex.App.-Dallas 2005, pet. denied). A cause of action generally accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 514 (Tex.1998).

Blume insists that the accrual date is the date that Jones first had the right to the money. Blume asserts that limitations begins to run on the date the condition precedent occurs. According to Blume, the condition precedent in this case was settlement of the *Means* case and receipt of the settlement proceeds. The cases relied upon by Blume do not support his position that a cause of action accrues when the condition precedent occurs. The cases hold that limitations cannot begin running *until* the condition precedent is met. They do not hold that limitations begins running *when* the condition precedent occurs. *See Washington v. Martin,* 503 S.W.2d 330, 332 (Tex.Civ.App.-Amarillo 1973, no writ) (limitations on a note cannot begin running until maker's handwritten condition met); *Miteff v. Guardian Title Co.,* 612 S.W.2d 693, 696 (Tex.Civ. App.-Fort Worth 1981, no writ) (limitations on claim to portion of purchaser's earnest money did not begin to run because seller had not made an election of remedies). Unlike Blume who asserted condition precedent to support his limitations defense, the parties in these cases asserted the condition precedent to defeat the affirmative defense of limitations.

Moreover, Blume's assertion that Jones first had the right to the money on September 24, 1998 is incorrect. In his brief,

Blume himself states that the money was available from the bank on October 1, 1998. We note that Elaine Guytine, an employee at Mercantile Bank & Trust, stated in her affidavit that the money was available as of September 30, 1998, following a five-day hold. Even if the funds were available on September 30, 1998, we hold that the alleged wrongful conduct did not occur until October 1, 1998.

Jones's breach of contract claim is not that Blume failed to pay him any share of the settlement proceeds. Rather, he contends that Blume breached the contract when he deducted $15,712.54 from Jones's share of the attorney's fees. The alleged breach and wrongful act is that Blume paid himself $15,712.54 from Jones's share of the proceeds. This alleged wrongful act did not occur until October 1, 1998 when Blume wrote a check from his IOLTA account to himself for that amount. Accordingly, October 1, 1998 is the date the alleged wrongful act occurred. *See Anderson,* 176 S.W.3d at 690. It is also the date that facts came into existence authorizing Jones to seek a judicial remedy. *See Johnson & Higgins of Tex., Inc.,* 962 S.W.2d at 514. Accordingly, we conclude that Jones timely filed his lawsuit within the four-year limitations period on October 1, 2001.

Jones also contends, under his tenth point of error, that the trial court erred in granting summary judgment on the ground that the new claims asserted against Blume & Stoddard in his fourth amended petition are untimely because they do not relate back to any timely filed claim. In his original petition, Jones asserted a breach of contract cause of action against Blume & Stoddard. Jones dropped this claim in his fourth amended petition. He did, however, assert a breach of contract action against James Blume and James Blume, P.C. He also asserted

new causes of action in his fourth amended petition against all appellees. Blume asserted in his motion for summary judgment that because Jones dropped the original breach of contract action against Blume & Stoddard, there is no cause of action that the newly plead causes against Blume & Stoddard could relate back to. Jones contends that the new causes of action asserted in his fourth amended petition do relate back to the breach of contract claim asserted in his original petition.

■ The new causes of action asserted against Blume & Stoddard in Jones's fourth amended petition arise from the same transactions that gave rise to the breach of contract claim. "If an amended pleading adds causes of action based on the same transaction or occurrence forming the basis of the claims made in the original pleading, then the amended pleading 'relates back' to the original filing and is not subject to a limitations defense." *Delhomme v. Com'n for Lawyer Discipline*, 113 S.W.3d 616, 621 (Tex.App.-Dallas 2003, no pet.). The claims asserted in Jones's fourth amended petition are based on the same transaction forming the basis of the claims made in the original pleading. Dropping the contract claim against Blume & Stoddard does not affect the relation back doctrine with respect to the new claims asserted that arise from the same transaction.

Thus, we conclude the trial court erred in granting summary judgment on the ground that Jones's lawsuit was not timely filed. We sustain Jones's tenth point of error.

### Breach of Fiduciary Duty

In his first, second, third, fourth, and fifth points of error, Jones contends the trial court erred in granting summary judgment on his breach of fiduciary duty claim.

■ The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant. *See Punts v. Wilson*, 137 S.W.3d 889, 891 (Tex.App.-Texarkana 2004, no pet.). A fiduciary relationship may be formal or informal. Fiduciary duties arise as a matter of law in certain formal relationships, including attorney-client and trustee relationships. *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex.2005).

### 1. Formal Fiduciary Relationship

Jones contends that he had a formal fiduciary relationship with Blume. He asserts several theories in support of a formal fiduciary relationship. We will address each in turn.

### a. Joint Venturer's Fiduciary Duty

■ Jones alleges in his first and second points of error that the trial court erred in granting summary judgment on his fiduciary duty claim because a fiduciary relationship exists between joint venturers. Blume asserts that Jones has waived these points of error because he did not plead a joint venture relationship. Jones counters that he "implicitly" asserted a joint venture relationship in his amended motion for summary judgment. We disagree. Jones stated in his amended motion for summary judgment, "Not only was the fiduciary relationship created between Plaintiff and Defendant, Blume, P.C. it also was a formally recognized relationship of that of an attorney or escrow agent at best or that of a joint venturer at least." Jones did not assert that he and Blume formed a joint venture when they signed the fee agreement. Nor does he assert that Blume breached a fiduciary duty that

he owed to Jones as a result of the joint venture. We conclude this lone mention of joint venture in passing does not amount to an assertion of joint venture as a basis for liability. *See Gillespie v. Scherr*, 987 S.W.2d 129, 133 (Tex.App.-Houston [14 th Dist.] 1998, pet. denied) (op. on mot. reh'g).

We conclude that Jones waived his claim that Blume breached his fiduciary duty arising out of a joint venture between Jones and Blume. We overrule Jones's first and second points of error.

### b. Fiduciary Duty of Escrow Agent

■ In his third point of error, Jones contends that the trial court erred in granting summary judgment on his claim that Blume breached his fiduciary duty as an escrow agent.

■ An escrow agent must be appointed through a specific legal document that imparts a specific legal obligation. *Bell v. Safeco Title Ins. Co.*, 830 S.W.2d 157, 160 (Tex.App.-Dallas 1992, writ denied). An escrow agent's duties are strictly limited to those set forth in the escrow agreement. *Equisource Realty Corp. v. Crown Life Ins. Co.*, 854 S.W.2d 691, 697 (Tex.App.-Dallas 1993, no writ).

In his September 22, 1998 memo to Jones, Blume stated that he would distribute the settlement proceeds as soon as the checks clear the bank. Jones relies on this statement from the memo in addition to the fee sharing agreement as evidence of an escrow agreement. These documents, however, do not appoint Blume as an escrow agent. Furthermore, James Blume and Jennifer Stoddard stated in their affidavits that neither entered into an escrow agreement nor agreed to become an escrow agent.

Absent a written agreement appointing Blume as an escrow agent, Blume had no duty to act as one and owed no fiduciary duty to Jones as an escrow agent. Thus, the trial court did not err in granting summary judgment on Jones's claim that Blume breached his fiduciary duty as escrow agent. We overrule Jones's third point of error.

### c. Fiduciary Duty as Trustee

■ In his fourth point of error, Jones contends the trial court erred in granting summary judgment on his claim that Blume breached his fiduciary duty as trustee.

■ The Texas Trust Code provides that a trust is created "only if the settlor manifests an intention to create a trust." TEX. PROP.CODE ANN. § 112.002 (Vernon 1995). A court has no authority to impose a trust and trustee duties unless the prerequisites of a trust are satisfied. *See Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 438 (Tex. App.-Houston [14th Dist.] 2000, pet denied).

The record in this case does not contain any evidence that the *Means* settlement agreement manifested a clear intention to create a trust. In his affidavit, James Blume stated that he did not discuss a trust with Means on September 24, 1998 and that he did not state that he would become a trustee. Similarly, Jennifer Stoddard testified that, at the time of settlement, there was no discussion of either the creation of a trust or the dispersal of the contingent fee portion of the settlement proceeds. The record is void of any evidence of an intent to create a trust with respect to the settlement proceeds. Thus, the trial court did not err in granting summary judgment on Jones's claim that Blume breached his fiduciary duty as a trustee. We overrule Jones's fourth point of error.

### 2. Informal Fiduciary Relationship

Having determined that no formal fiduciary relationship existed between Jones and Blume, we turn now to see whether an informal fiduciary relationship existed between the parties. In his fifth and seventh points of error, Jones contends the trial court erred in granting summary judgment on his claim for breach of a general fiduciary duty to refrain from self-dealing.

■ An informal fiduciary relationship may arise where one person trusts in and relies upon another, whether the relationship is a moral, social, domestic, or purely personal one. *Meyer*, 167 S.W.3d at 331; *Schlumberger Technology Corp. v. Swanson*, 959 S.W.2d 171, 176 (Tex.1997). To impose an informal fiduciary relationship in a business transaction, a special relationship of trust and confidence must exist prior to, and separate from, the parties' agreement. *Schlumberger Tech. Corp.*, 959 S.W.2d at 177.

■ The summary judgment evidence shows that *after* Jones, Blume, and Kelly entered into the fee sharing agreement, Jones and Blume worked in adjacent offices on the same floor of an office building and shared a receptionist and a secretary. For a few months during this time period, Jones became very ill and Blume paid Jones's expenses, including rent. The record in this case contains no evidence of a special relationship of trust and confidence between Jones and Blume *prior* to their fee sharing agreement. The evidence in this case is that Jones and Blume shared office space and that Blume paid some of Jones's expenses while he was ill, all of which occurred *after* their agreement.

We conclude the summary judgment evidence establishes that an informal fiduciary relationship did not exist between Jones and Blume. Accordingly, in the absence of any fiduciary relationship, the trial court did not err in granting summary judgment on Jones's breach of fiduciary duty claim.

We overrule Jones's fifth and seventh points of error.

### Duty under Disciplinary Rule of Professional Conduct

■ In his sixth point of error, Jones contends the trial court erred in granting summary judgment on his claim that Blume breached his duty under the disciplinary rules of professional conduct. Jones relies upon rule 1.14 to support his contention that Blume owed duties with respect to the dispersal of the settlement funds.

Rule 1.14 provides, in pertinent part, as follows:

(a) A lawyer shall hold funds and other property belonging in whole or in part to clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own property. . . .

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(c) When in the course of representation a lawyer is in possession of funds or other property in which both the lawyer and other person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their in-

terest.... If a dispute arises concerning their respective interests, the portion in dispute shall be kept separated by the lawyer until the dispute is resolved, and the undisputed portion shall be distributed appropriately.

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.14(a)—(c) *reprinted in* TEX. GOV'T CODE ANN. tit. 2, subtit. G app. A (Vernon 2005) (TEX. STATE BAR R. art. X, § 9). Jones contends that he is a "third person" within the meaning of this rule. As such, Jones contends that Blume owed him a duty with respect to the handling of the settlement proceeds. For reasons stated below, we conclude that Jones cannot assert a violation of rule 1.14 as a basis for liability.

The preamble to the State Bar Rules states:

These rules do not undertake to define standards of civil liability of lawyers for professional conduct. Violation of the Texas Disciplinary Rules of Professional Conduct does not give rise to a private cause of action nor does it create any presumption that a legal duty to a client has been breached.... Accordingly, nothing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.

TEX. DISCIPLINARY R. PROF'L CONDUCT preamble ¶ 15. A claim that a lawyer has violated a rule of professional conduct should be raised in a disciplinary proceeding. The disciplinary rules set forth the proper conduct of lawyers "solely for the purpose of discipline within the profession." 1 J. Hadley Edgar, Jr. & James B. Sales, *Texas Torts and Remedies* § 12.02[1][a][ii][A] (2000). A private cause

of action does not exist for violation of the disciplinary rules. *Id.*

Accordingly, Jones cannot assert Blume's alleged violation of rule 1.14 as a basis for his breach of fiduciary duty claim. We overrule Jones's sixth point of error.

### Conspiracy and Constructive Fraud

In his eighth and ninth points of error, Jones contends the trial court erred in granting summary judgment on his conspiracy and constructive fraud claims.[2] Jones admits that these claims are dependent upon the existence of a fiduciary duty. We have determined that Blume did not owe any fiduciary duty to Jones. In the absence of a fiduciary relationship, we conclude the trial court did not err in granting summary judgment on Jones's claims of conspiracy and constructive fraud. We overrule Jones's eighth and ninth points of error.

### Attorney's Fees

In his eleventh point of error, Jones complains of the trial court's granting Blume's motion for summary judgment on his claim for attorney's fees. The Court has reversed the trial court's summary judgment with respect to Jones's breach of contract claim. Attorney's fees may be recoverable for a breach of contract claim. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 1997). Therefore, we sustain Jones's eleventh point of error, reverse the trial court's summary judgment on the attorney's fee claim and remand that claim to the trial court.

### *Quantum Meruit*

In his twelfth point of error, Jones contends the trial court erred in

---

**2.** In his seventh point of error, Jones asserts the trial court erred in granting summary judgment because once a fiduciary relationship is established, Blume had the burden to establish the fairness and good faith of the distribution of the settlement proceeds. Because we have concluded that no fiduciary relationship existed between Blume and Jones, we overrule this point of error.

granting summary judgment on his claim of *quantum meruit.* Jones pursued this claim for the reasonable value of his services in the alternative to his breach of contract claim. Where services are covered by an express contract, however, the remedy of *quantum meruit* is generally not available. *See Vortt Exploration Co. v. Chevron,* 787 S.W.2d 942, 944 (Tex. 1990). Jones and Blume had a written agreement with regard to their fee arrangement. Accordingly, we conclude the trial court did not err in granting summary judgment on Jones's alternative claim of *quantum meruit.* We overrule Jones's twelfth point of error.

## Conclusion

We reverse and remand, in part, and affirm, in part, the trial court's judgment. We reverse the trial court's judgment with respect to Jones's claims for breach of contract and attorney's fees and remand those claims to the trial court for proceedings consistent with this opinion. In all other respects, we affirm the trial court's judgment.