### EQUITABLE RECOVERY, L.P., Appellant

v.

### HEATH INSURANCE BROKERS OF TEXAS, L.P., Heath Insurance Brokers, Inc., Heath Holdings USA, Inc., and HIB GP, Inc., Appellees.

No. 05–05–01146–CV.

Court of Appeals of Texas, Dallas.

Sept. 13, 2007.

San Antonio 2005, no pet.); *Smart v. State*, 153 S.W.3d 118, 120 (Tex.App.-Beaumont 2004, pet. ref'd).

Thomas M. Farrell, Nickens Keeton Lawless Farrell & Flack LLP, Houston, TX, for Appellant.

Michael A. Swartzendruber, Fulbright & Jaworski L.L.P., Dallas, TX, Michael J. Cawley, Wilson Elser Moskowitz Edelman & Dicker LLP, Philadelphia, PA, G. Byron Sims, Houston, TX, for Appellee.

Before Justices WHITTINGTON, MOSELEY, and O'NEILL.

## OPINION

Opinion by Justice O'NEILL.

Appellant Equitable Recovery, L.P. (Equitable), as assignee of claims previously owned by 22 Texas Services, L.P. and 22 Keystone Services, L.P. (22s), sued Appellees Heath Insurance Brokers of Texas, L.P., Heath Insurance Brokers, Inc., Heath Holdings USA, Inc., and HIB GP, Inc. (Heath), for fraud, negligent misrepresentation, Texas Insurance Code violations, fiduciary duty breach, and common law contribution and indemnity, alleging fraudulent inducement of an insurance policy covering 22s' nursing homes. Heath sought summary judgment on affirmative defenses of release, res judicata, collateral estoppel, judicial estoppel, and limitations, and on Equitable's contribution/indemnity claims, which the trial court granted. In two points of error, Equitable argues the court erred in granting summary judgment because there are fact issues on Heath's affirmative defenses and erred in granting summary judgment on its contribution/indemnity claims. We affirm the summary judgment on the contribution and indemnity claims and reverse the summary judgment on all Heath's affirmative defenses, and remand.

## BACKGROUND

This appeal turns on the effect of a settlement of one of two sets of fraud-related claims involving two separate liability policies issued by the same insurer, Caliber One Indemnity Co. (Caliber), to two different insureds. The insureds were 22s and Senior Living Properties, L.L.C. (SLP). They are unaffiliated and were not insured under each other's policies. We will refer to the two policies as the 22s-Policy and SLP–Policy. A Heath entity and Clair Odell Insurance Agency, L.L.C. (Odell) were 22s' and SLP's wholesale and retail insurance brokers, respectively, and were involved in soliciting and procuring both the 22s-Policy for 22s and the SLP–Policy for SLP.

Caliber later disputed coverage on both policies alleging they were fraudulently induced by various misrepresentations or non-disclosures relevant to insurability or underwriting risk.[1] We will refer to these

---

1. E.g., the insureds' insurance and loss history, claim exposure, affiliation, and financial

claims regarding each policy as the 22s-Claims and SLP–Claims, respectively. Coverage litigation ensued in disparate venues. 22s and SLP claimed innocence of any fraud, blaming Heath and Odell. Caliber ultimately sued Heath and Odell as third-party defendants on the SLP–Claims. All suits ultimately settled.

Before Caliber ever sued Heath and Odell, it separately settled with 22s. In that settlement, Caliber assigned its 22s-Claims against Heath and Odell to 22s. 22s later assigned them to Equitable, which then brought this suit as assignee of the 22s-Claims, to recover what Caliber paid 22s in the Caliber–22s settlement. Odell was non-suited and is not before us.[2] Equitable did not and does not seek, in the trial court or here, any relief related to the SLP–Policy or on the SLP–Claims.

Equitable bases all its fraud, negligent misrepresentation, Insurance Code, fiduciary duty, and contribution/indemnity recovery theories on the same allegations of fraud inducing Caliber's policy-issuance. The core issue before us is whether release of claims involving the SLP–Policy also extinguished claims involving the 22s-Policy. Specifically, Heath argues that the record conclusively establishes that various court-approved transactions and a release and dismissal of the SLP–Claims also extinguished Equitable's 22s-Claims as a matter of law. We disagree. As shown below, the record contains evidence that

the 22s-Claims were not owned by any party to any transaction that Heath argues extinguished the 22s-Claims when those transactions were executed or occurred.

### RELEVANT FACTS AND PROCEEDINGS

To decide this appeal we must analyze a series of transactions arising in coverage litigation between Caliber and its insureds, 22s and SLP, on the 22s-Policy and SLP–Policy, in order to assess the status and ownership of the 22s-Claims and SLP–Claims. The coverage litigation commenced in courts in two states and encompassed fraud, contract, rescission and bad faith claims.[3] The summary judgment record contains evidence showing the following:

### Caliber Assigns 22s-Claims to 22s, which in turn Assign them to Equitable

Caliber and 22s ultimately settled all their policy-related disputes (Caliber–22s Settlement). Caliber cancelled the 22s-Policy and paid 22s a significant sum, "buying back" the policy. The Caliber–22s Settlement did not involve SLP, the SLP–Policy, or SLP–Claims.

The parties do not dispute that under the Caliber–22s Settlement, on May 2, 2003, Caliber assigned to 22s (or its designees) all claims or rights of recovery Caliber had against Heath and Odell related to the 22s-Policy (Caliber–22s Assignment).

---

ability to meet the policies' substantial "self-insured retentions" (essentially a high deductible).

2. Equitable also sued Mellon Insurance Agency, Inc., but non-suited it as well.

3. • **Pennsylvania Suit.** In Pennsylvania state court, Caliber sued 22s and SLP to rescind both policies, alleging fraudulent inducement. 22s denied any fraud and separately counter-claimed for contract breach, declaration of

coverage, and Pennsylvania's statutory bad faith.

• **Texas Suit.** Earlier in Texas state court, another insurer of 22s and SLP sued 22s and SLP for fraudulent inducement and rescission of that insurer's policy. The suit also sought a coverage declaration of relative liability among 22s and SLP's various insurers, and Caliber was later joined as a party-defendant. Caliber apparently cross-claimed against 22s and SLP alleging fraudulent inducement of both policies.

In other words, 22s acquired the 22s-Claims. Those claims were defined to include any amounts paid under the Caliber–22s Settlement or paid in settlement of any claims for coverage under the 22s-Policy. The Caliber–22s Assignment expressly excluded assigning the SLP–Claims.

22s later assigned the 22s-Claims to Equitable (22s-Equitable Assignment).[4] Equitable, as assignee of the 22s-Claims, then brought the present suit against Heath on the 22s-Claims.

### SLP Litigates its Coverage Disputes with Caliber in Bankruptcy Court

While SLP's state-court coverage litigation was pending, SLP filed for bankruptcy in Texas (SLP Bankruptcy). Caliber and Heath filed proofs of claim as creditors. To resolve its pending state-court coverage disputes, SLP litigated them in a bankruptcy adversary proceeding (SLP Adversary). SLP sued Caliber (and others) for contract breach and declaratory relief. Caliber counterclaimed to rescind the SLP–Policy, alleging fraudulent inducement.

22s were not parties to the SLP Adversary or any SLP Bankruptcy proceeding. They were not creditors of SLP and not in bankruptcy. The SLP Adversary did not mention 22s, the 22s-Policy, or the 22s-Claims, and identified only the SLP–Policy as the subject of the coverage disputes SLP was litigating with Caliber.

### After *Assigning 22s-Claims to 22s,* Caliber sues Heath on SLP–Claims in SLP Bankruptcy

On May 23, 2003, *after* Caliber assigned the 22s-Claims to 22s on May 2, 2003,

Caliber sued Heath and Odell for the first time, as third-party defendants in the SLP Adversary (Caliber–Heath Suit). Caliber alleged Heath and Odell fraudulently induced Caliber to issue the SLP–Policy.[5] 22s were not parties to the Caliber–Heath Suit in any venue.

### Caliber Assigns SLP–Claims to SLP, which in turn Releases them

Caliber and SLP ultimately settled all their policy-related disputes (Caliber–SLP Settlement). The SLP Bankruptcy Court approved it on October 22, 2003. 22s were not parties. The Caliber–SLP Settlement narrowly defined the claims and coverage disputes it settled to be those related to the SLP–Policy only, never mentioning the 22s-Policy.

Under the Caliber–SLP Settlement, Caliber cancelled the SLP–Policy and assigned to SLP (or its designees) all claims or rights of recovery Caliber had against Heath and Odell related to the SLP–Policy (Caliber–SLP Assignment). In other words, SLP acquired the SLP–Claims. The assigned claims were defined to include any amounts paid under the Caliber–SLP Settlement or paid in settlement of any claims for coverage under the SLP–Policy.

The Caliber–SLP Assignment did not, and could not have, assigned the 22s-Claims. The Caliber–SLP Assignment narrowly specified the claims it was assigning to be related to the SLP–Policy only, a defined term, never mentioning the 22s-Claims. And at that time, the 22s-Claims were owned by 22s, not Caliber, because Caliber had earlier assigned them to 22s under the Caliber–22s Assignment. Heath concedes in its brief, at p. 18, that

---

4. The record does not show 22s ever sued Heath or Odell on the 22s-Claims.

5. The Caliber–Heath Suit was later severed from the SLP Adversary and then litigated in federal district court.

22s owned the 22s-Claims until they were assigned to Equitable on July 12, 2004.

SLP and Heath ultimately broadly settled all disputes between them (encompassing the SLP–Claims that SLP acquired under the Caliber–SLP Assignment) (SLP–Heath Settlement). 22s were not parties. The SLP–Heath Settlement references the Caliber–SLP Assignment, defines the settled disputes to encompass the SLP–Claims, and recites that the SLP Bankruptcy trustee had authority to settle "claims owned by" SLP.[6] The SLP Bankruptcy Court approved the SLP–Heath Settlement on May 5, 2004, referencing an attached unexecuted copy. The court decreed that the SLP Bankruptcy trustee had authority to settle and release "the claims that are the subject of the [SLP–Heath Settlement]."

Caliber was not a party or signatory to the SLP–Heath Settlement–Caliber no longer owned the SLP–Claims (having assigned them to SLP). The SLP Bankruptcy Court's order approving the SLP–Heath Settlement recites that only the SLP Bankruptcy trustee and Heath negotiated it and Caliber did not join the trustee's motion for court approval.

Under the SLP–Heath Settlement, SLP broadly released Heath. Though not a party or signatory, the SLP–Heath Settlement also recites *Caliber* prophylactically released Heath (Heath Release). But Caliber no longer owned the SLP–Claims. What the Heath Release recited was that Caliber released Heath "by and through the [SLP Bankruptcy] Trustee as owner of 100%" of the SLP–Claims. The Heath Release broadly recited that Caliber released any existing or potential claims it had against Heath "related to" or the "subject of" the SLP Bankruptcy, SLP Adversary, Caliber–Heath Suit, and SLP–Claims.

### Caliber Dismisses its Suit against Heath in SLP Bankruptcy

Under the SLP–Heath Settlement, Heath and the SLP Bankruptcy trustee agreed to dismiss the Caliber–Heath Suit, stipulating to a form motion and order (Caliber–Heath Suit Dismissal). Though not a party to the SLP–Heath Settlement, Caliber referenced it and filed the agreed motion, styled as its own. The motion and order were agreed to by Heath's counsel and joint counsel for Caliber and the SLP Bankruptcy trustee. 22s, non-parties to the Caliber–Heath Suit, did not sign or join in the dismissal. The order, entered July 14, 2004, dismissed with prejudice:

> all claims that were *asserted or could have been asserted by Caliber* … or its assignee(s) against Heath … based upon, arising from or related to any of the events, transactions, occurrences, conduct and/or allegations that are or were the subject of [the SLP] Adversary … or [the Caliber–Heath Suit] …, as well as all damages and remedies arising therefrom or associated therewith ….
> [emphasis added.]

### Equitable's Present Suit on 22s-Claims

Heath admits Equitable was a non-party to and had no involvement with any of the above transactions and proceedings.[7] Equitable brought this suit against Heath on the 22s-Claims on July 13, 2004. It acquired them from 22s under the 22s-Equitable Assignment the day before.

---

6. The SLP–Heath Settlement was actually entered into by the SLP Bankruptcy trustee on behalf of the SLP Trust, apparently under the terms of SLP's plan of reorganization under chapter 11 of the Bankruptcy Code.

7. *See* Heath's brief, at pp. 1–2 ("Equitable Recovery was involved in none of the transactions at issue….").

Alleging that Heath fraudulently induced Caliber to issue the 22s-Policy to 22s, Equitable sought to recoup amounts Caliber paid 22s under the Caliber–22s Settlement, amounts Caliber paid on any claims under the 22s-Policy, and commissions Heath received in brokering the 22s-Policy for 22s.

Below, Heath sought and obtained a complete summary judgment on affirmative defenses of release, res judicata, collateral estoppel, and judicial estoppel. It argued that the 22s-Claims Equitable now asserts as Caliber's ultimate assignee (through 22s) were extinguished by the court-approved transactions and proceedings in the SLP Bankruptcy and Caliber–Heath Suit; i.e., (i) the SLP–Heath Settlement and its Heath Release in the SLP Bankruptcy and (ii) the Caliber–Heath Suit Dismissal in the Caliber–Heath Suit. Equitable appeals the take-nothing judgment against it.

### STANDARD OF REVIEW

We review the summary judgment on Heath's TEX.R. CIV. P. 94 affirmative defenses under well known standards. *See* TEX.R. CIV. P. 166a(c); *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999); *Jones v. Blume*, 196 S.W.3d 440, 445 (Tex.App.-Dallas 2006, pet. denied). Heath bears the burden to conclusively prove all elements of its affirmative defenses as a matter of law. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995); *Thomas v. Omar Investments, Inc.*, 156 S.W.3d 681, 683 (Tex.App.-Dallas 2005, no pet.).

■■■ Settlements disposing of disputes are "enforceable in the same manner as any other written contract." TEX. CIV. PRAC. & REM.CODE § 154.071(a) (Vernon 2005). Releases are similarly subject to contract construction rules. *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex.1990).

Equitable does not raise contractual ambiguity. We test the summary judgment under a standard of non-ambiguity. *See Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 56, 64 (Tex.App.-Dallas 2006, pet. denied). We give effect to all terms and the parties' intent as expressed in the agreement itself. *Hackberry*, 205 S.W.3d at 55–56. We effectuate a release's intent considering "facts and circumstances surrounding its execution." *Tricentrol Oil Trading, Inc. v. Annesley*, 809 S.W.2d 218, 221 (Tex.1991) (per curiam).

### RES JUDICATA/COLLATERAL ESTOPPEL, JUDICIAL ESTOPPEL, AND RELEASE

In Point of Error No. 1(a)-(d), Equitable argues that the summary judgment evidence does not conclusively establish Heath's affirmative defenses of res judicata, collateral and judicial estoppel, and release as a matter of law. We agree.

Heath argues that the following court-approved transactions arising in the SLP Bankruptcy extinguished the 22s-Claims:

- **Heath Release.** The SLP Bankruptcy Court-approved SLP–Heath Settlement, containing the Heath Release, providing that the SLP Bankruptcy trustee, "as owner of 100%" of the SLP–Claims, broadly released, on behalf of Caliber, all existing or potential claims Caliber had against Heath "related to" or the "subject of" the SLP Bankruptcy, SLP Adversary, Caliber–Heath Suit, or SLP–Claims.

- **Caliber–Heath Suit Dismissal.** The agreed Caliber–Heath Suit Dismissal, dismissing with prejudice "all claims" Caliber (or its assignees, i.e. Equitable) asserted, or "could have" asserted, against Heath, "based upon, arising from or related to any of the events, transactions, occurrences, conduct

and/or allegations" that were the "subject of" the SLP Adversary or Caliber–Heath Suit, including "all damages and remedies arising therefrom or associated therewith...."

■ Heath agrees that claim preclusion of res judicata minimally requires an ability to bring the same claim in an earlier proceeding and that issue preclusion of collateral estoppel requires that the same issue was actually litigated in an earlier proceeding.[8] Neither doctrine can apply because the 22s-Claims could not have been asserted in the SLP Bankruptcy or in any court where the Caliber–Heath Suit was litigated if Caliber had assigned them to 22s under the Caliber–22s Assignment before Caliber ever sued Heath. The record shows that 22s were non-parties to all the transactions and proceedings Heath cites, and shows that at the time of all of them, *22s,* not Caliber, SLP, or the SLP Bankruptcy trustee, owned the 22s-Claims.

■ The agreed Caliber–Heath Suit Dismissal does not aid Heath. A dismissal plainly can only dismiss the *suit and claims before it.* And its express terms dismissed claims that "were asserted or could have been asserted...." The Caliber–Heath Suit Dismissal could have no effect on the 22–Claims if Caliber had assigned them to 22s before ever suing Heath.

■ Judicial estoppel does not apply for the same reason. The parties agree the doctrine requires taking a legal position "plainly inconsistent" with an earlier one before a court.[9] Heath argues that Caliber's agreement to the Caliber–Heath Suit Dismissal estops Equitable from asserting the 22s-Claims Equitable now owns by as-signment. Caliber only agreed to dismiss the claims it was asserting or "could have" asserted against Heath. The record shows it did not then own the 22s-Claims. Thus, Equitable's later asserting them in a different suit cannot be "plainly inconsistent."

■ The Heath Release also does not aid Heath. Heath argues the Heath Release extinguished the 22s-Claims because its terms broadly released all existing and potential claims related or subject to the Caliber–Heath Suit. That suit does include misrepresentation allegations regarding 22s' insurability risk by 22s and its brokers, agents, and representatives (including Heath) in obtaining the 22s-Policy. But regardless of what the suit may allege, a party who does not own a claim cannot release it. *Goldman v. Alkek,* 850 S.W.2d 568, 578 n. 8 (Tex.App.-Corpus Christi 1993, no writ) ("A release can be executed by one who owns a claim or right against another.").

All Heath's defenses depend on SLP's or the SLP Bankruptcy trustee's ownership of the 22s-Claims. That claim of ownership can arise only from the Caliber–SLP Assignment contained in the Caliber–SLP Settlement. But both expressly specify the claims settled and assigned relate to the SLP–Policy only. Because there is summary judgment evidence that neither SLP nor the SLP Bankruptcy trustee owned the 22s-Claims at the time of any transaction or proceeding that Heath claims extinguished them and to which SLP or the SLP Bankruptcy trustee were parties, we conclude Heath failed in its burden to conclusively prove as a matter of law all elements of its affirmative defenses

---

8. *Nilsen v. City of Moss Point,* 701 F.2d 556, 559–60 (5th Cir.1983); *Stripling v. Jordan Prod. Co.,* 234 F.3d 863, 868 (5th Cir.2000). The parties agree federal preclusion law ap-plies. *Geary v. Tex. Commerce Bank,* 967 S.W.2d 836, 837 (Tex.1998).

9. *Jethroe v. Omnova Solutions, Inc.,* 412 F.3d 598, 600 (5th Cir.2005).

of res judicata, collateral estoppel, judicial estoppel, and release. We sustain Equitable's Point of Error No. 1(a)-(d).

## LIMITATIONS

 In Point of Error No. 1(e), Equitable argues that Heath failed to conclusively establish its limitations affirmative defense as a matter of law. A summary judgment movant on limitations bears the burden to "(1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury." *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). If the movant does this, the nonmovant must adduce evidence raising a fact issue in avoidance of limitations. *Id.* Heath's motion does not meet this standard because it is limited to arguing the discovery rule.

Equitable stands in the shoes of its assignors and takes them subject to defenses against them. *Burns v. Bishop,* 48 S.W.3d 459, 466 (Tex.App.-Houston [14th Dist.] 2001, no pet.). Equitable bases all its fraud, negligent misrepresentation, Insurance Code, and fiduciary duty recovery theories on the same underwriting fraud allegations. Heath argues the 22s-Claims are barred because Caliber or 22s were on notice, more than four years before the filing of Equitable's July 13, 2004 suit,[10] of

the factual basis of the claim that Heath fraudulently induced Caliber to issue the 22s-Policy.

Heath's limitations argument is based on Caliber's joinder as a party-defendant in the earlier Texas state court coverage litigation between Caliber and 22s (Texas Suit) on June 13, 2000, and service of that suit on July 10, 2000.[11] Heath also argues 22s had already appeared in that suit before Caliber was served. In the Texas Suit, a different insurer of 22s sued 22s alleging fraudulent inducement and also sought a coverage declaration of relative liability among 22s' various insurers. Heath argues that Caliber and 22s were then put on actual, constructive, or inquiry notice of the basis of the 22s-Claims prosecuted in *this* suit because the Texas Suit alleges the same type of misrepresentations (that 22s and its agent Odell misrepresented 22s' loss history and financial condition, fraudulently inducing issuance of an unrelated insurance policy). *See Wise v. Anderson,* 163 Tex. 608, 359 S.W.2d 876, 879 (1962) (knowledge of facts causing reasonably prudent person to inquire leading to discovery of fraud "is in law knowledge of the fraud").

 These allegations are relevant to the discovery rule. The general rule governing when a claim accrues, to start limitations running, is the "legal injury rule," which states that a claim accrues "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred."

10. Equitable does not dispute the maximum applicable limitations period is four years.

11. Though Caliber did not receive service until July 13, 2000, the suit was served through the Texas Commissioner of Insurance as statutory agent for service of process on July 10, 2000, and service on the commissioner is service on the insurer. TEX. INS.CODE ANN. § 804.202 (Vernon Pamph.2006). To deter-

mine the expiration day of an applicable limitations period, "the period ends on the same numerical day in the concluding month as the day of the month from which the computation is begun." *Salahat v. Kincaid,* 195 S.W.3d 342, 343–44 (Tex.App.-Fort Worth 2006, no pet.) (reviewing authorities, quoting TEX. GOV'T CODE § 311.014(c)).

*Murphy v. Campbell,* 964 S.W.2d 265, 270 (Tex.1997). But one who has not been harmed has no claim at all to start limitations running. *Atkins v. Crosland,* 417 S.W.2d 150, 152–53 (Tex.1967). Damage or injury is an essential element of all of Equitable's claims.[12] The discovery rule is an "exception" to the legal injury rule and *defers* accrual "until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury." *Murphy,* 964 S.W.2d at 270.

Heath's trial court reply brief contains a sentence asserting that the 22s-Policy issuance date, more than four years before this suit was filed, was Caliber's legal injury date, when it "first assumed the risk" on it. But Heath's summary judgment motion does not address the "legal injury rule" and instead addresses the "discovery rule." Regardless of whether Heath states the correct accrual rule in insurance fraud cases or whether alleging an unquantified or theoretical risk under an insurance policy conclusively establishes legal injury on summary judgment,[13] alleging for the first time in a reply brief an essential element of Heath's affirmative defense does not comply with TEX.R. CIV. P. 166a(c). *McConnell v. Southside Indep. School Dist.,* 858 S.W.2d 337, 341 (Tex.1993); *Shade v. City of Dallas,* 819 S.W.2d 578, 583 (Tex.App.-Dallas 1991, no writ), *disapproved of on other grounds, City of Tyler v. Likes,* 962 S.W.2d 489, 498–99 (Tex.1997). We sustain Equitable's Point of Error No. 1(e).

## COMMON LAW CONTRIBUTION AND INDEMNITY

 Equitable alternatively sued Heath for common law contribution and

---

**12.** *Nelson v. Regions Mortgage, Inc.,* 170 S.W.3d 858, 862 (Tex.App.-Dallas 2005, no pet.) (citing *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex.1998)) (fraud); *Johnson v. Sovereign Camp, W.O.W.,* 125 Tex. 329, 83 S.W.2d 605, 608 (Tex.1935) (negligence), *overruled on other grounds, Doctors Hosp. Facilities v. Fifth Court of Appeals,* 750 S.W.2d 177, 178–79 (Tex.1988) and *Fed. Land Bank Ass'n v. Sloane,* 825 S.W.2d 439, 442 (Tex. 1991) (negligent misrepresentation); TEX. INS. CODE § 541.151 (formerly TEX. INS.CODE art. 21.21, § 16) (insurance code violations); *Jones v. Blume,* 196 S.W.3d 440, 447 (Tex. App.-Dallas 2006, pet. denied) (breach of fiduciary duty; recognizing alternate damage measure of benefit to defendant). These claims are distinguishable from rescission, an equitable remedy, *Nelson v. Regions Mortgage, Inc.,* 170 S.W.3d 858, 863 (Tex.App.-Dallas 2005, no pet.), which is not a damage suit for fraud. *Rhoades v. Prudential Leasing Corp.,* 413 S.W.2d 404, 408 (Tex.Civ.App.-Austin 1967, no writ).

**13.** Heath cites *Genmoora Corp. v. Gardere & Wynne,* 1997 WL 499695, *10 (Tex.App.-Dallas Aug.25, 1997, no pet.) (not designated for publication), a legal malpractice case. We note the opinion pre-dates *Murphy v. Campbell,* 964 S.W.2d 265 (Tex.1997). The *Murphy* dissent stated the majority in effect held a claim accrues when one knows or should know of "a *mere risk* of injury, before any actual injury has occurred," and took issue with "courts of appeals that have substituted a 'risk of harm' requirement for an actual harm requirement." *Id.* at 274 and 274–75, n. 4 (Spector, J., dissenting) (emphasis original). The majority, however, stated the dissent "mischaracterize[d]" its holding, and stated a claim accrues when the plaintiff knows or should know "he *has been* legally injured by the alleged wrong, however slightly." *Id.* at 273 (emphasis added). *See also Rice v. Louis A. Williams & Assocs., Inc.,* 86 S.W.3d 329, 337–38, nn. 4–5 (Tex.App.-Texarkana 2002, pet. denied) (noting dissent and majority comments, stating court "largely repudiated the risk of harm language" used in professional malpractice cases before *Murphy*). *Rice* reversed a limitations summary judgment in a suit by insureds against insurance agents for procuring insufficient coverage, noting lack of summary judgment proof of a claim on the policy in excess of the coverage sought, which would show injury creating a cognizable claim. 86 S.W.3d at 339–40.

indemnity based on the same underwriting fraud allegations underlying its other recovery theories. In Point of Error No. 2, Equitable argues the trial court erred in granting Heath's supplemental summary judgment motion on these claims, which seek to recoup what Caliber paid 22s under the Caliber–22s Settlement. These claims are based on Heath's liability to Caliber, if any, on the 22s-Claims. But Caliber's claim against Heath is that it was induced to issue the 22s-Policy by Heath's misrepresentations made *directly* to Caliber.[14] Caliber's alleged liability to 22s is also direct on an insurance policy. Heath argues that under these allegations Equitable can assert no contribution or indemnity claim as a matter of law. We agree.

■■■■ Contribution and indemnity are methods by which the burden of paying damages to a plaintiff is shifted from one defendant to another, both of whom are jointly liable to the plaintiff on the same claim. *See* Black's Law Dictionary 329, 772 (7th ed.1999). It follows that no right of contribution or indemnity exists unless the plaintiff *has* a claim against the co-liable parties. *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 553 (Tex. 1981); *ECC Parkway Joint Venture v. Baldwin*, 765 S.W.2d 504, 513 (Tex.App.-Dallas 1989, writ denied). In other words, contribution and indemnity are not independent claims but are "derivative" of the plaintiff's claim against each co-liable party. *See Shoemake v. Fogel, Ltd.*, 826 S.W.2d 933, 935 (Tex.1992) (contribution); *Goose Creek Consol. Indep. School Dist. v. Jarrar's Plumbing, Inc.*, 74 S.W.3d 486, 492 (Tex.App.-Texarkana 2002, pet. denied) (third-party actions under Tex.R. Civ. P. 38(a) "join[ing] a party who may be

liable to the defendant or to the plaintiff for all or part of the plaintiff's claims against the defendant"). There can be no contribution or indemnity between two parties based on a direct claim between them.

■■■■ Equitable relies on an argued claim by 22s against Heath for "impliedly represent[ing]" it brokered the 22s-Policy without fraud. But any duty Heath may have owed 22s is irrelevant because no claim of 22s is before us. The only claims Equitable can have are Caliber's direct claims against Heath. The 22s-Equitable Assignment's terms assign no independent claim of 22s. Assignees stand in the shoes of their assignors and have no greater rights. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 420 (Tex.2000). Because any claims 22s may have against both Heath and Caliber or anyone else are not before us, there can be no derivative contribution or indemnity claim.

■■■■ Equitable has no common law indemnity claim as a matter of law. Common law indemnity has been abolished by statutory comparative negligence with two exceptions: where liability is vicarious and for innocent retailers in products liability cases. *Gen. Motors Corp. v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249, 255, n. 10 (Tex.2006). Neither exception applies here.

Equitable relies on *Celtic Life Ins. Co. v. Coats*, 885 S.W.2d 96, 97–99 (Tex.1994) and *Vecellio Ins. Agency, Inc. v. Vanguard Underwriters Ins. Co.*, 127 S.W.3d 134, 137–39 (Tex.App.-Houston [1st Dist.] 2003, no pet.). They are inapposite. They involve ordinary agency law making an insurer-principal vicariously liable to an insured for the insurer's broker-agent's misconduct or misrepresentations (e.g., that

---

14. Equitable alleges that Heath was "responsible for obtaining ... for the 22s ... all information necessary to procure insurance coverage ... and accurately and fairly presenting that information" to Caliber and that Heath's failure to do so resulted in the Caliber–22s coverage litigation that Caliber ultimately settled.

coverage exists) directed at and damaging the insured. Agency vicarious liability is based on the principal's control of the agent to further the principal's objectives. *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 686, 50 Tex. Sup.Ct. J. 764, 2007 WL 1376357, *5 (Tex. May 11, 2007).

These cases have no application. There is no relevant vicarious liability involved in this case. While Caliber may measure its *damages* it seeks from Heath by the amount it paid 22s to settle the litigation between them, its claim against Heath is still a claim for misrepresentations Heath is alleged to have made directly *to Caliber*.

 Equitable alternatively argues that the issue of whether pleadings fail to state a claim "may not be resolved by summary judgment" without an "opportunity to amend after special exceptions have been sustained" under *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983) (citing *Tex. Dep't of Corr. v. Herring*, 513 S.W.2d 6, 10 (Tex.1974)). However, summary judgment based on a pleading deficiency may be proper if the deficiency "could not be cured by amendment." *Toles v. Toles*, 113 S.W.3d 899, 909 (Tex. App.-Dallas 2003, no pet.) (citing *Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex. 1998)). Where the petition "affirmatively demonstrates that no cause of action exists or that the plaintiff's recovery is barred, then the plaintiff need not be given the opportunity to amend." *Toles*, 113 S.W.3d at 909 (citing *Peek v. Equip. Serv. Co.*, 779 S.W.2d 802, 805 (Tex.1989)).

Equitable contends that there is a fact issue on the nature of 22s' claims against Heath and on whether Caliber is vicariously liable to 22s for Heath's alleged misrepresentations. Our analysis above leads us to conclude Caliber's liability, if any, is not vicarious but direct on the 22s-Policy as a matter of law; that any claims of 22s are irrelevant because they are not before us;

and that Equitable's petition "affirmatively demonstrates" that the only claims Equitable has to assert are Caliber's direct claims against Heath. Because we hold Equitable has no contribution and indemnity claims as a matter of law, and because the *Toles* exception to the right to re-plead applies since amending Equitable's petition would be futile on this record, we overrule Point of Error No. 2. We thus need not reach Heath's alternative argument that contribution and indemnity are barred by release, res judicata, collateral and judicial estoppel, and limitations.

### Conclusion

In light of our analysis, we reverse the trial court's summary judgment against Equitable on Heath's affirmative defenses of release, res judicata, collateral estoppel, judicial estoppel, and statute of limitations to Equitable's claims for fraud, negligent misrepresentation, Texas Insurance Code violations, and breach of fiduciary duty, and remand for further proceedings consistent herewith. We affirm the trial court's summary judgment for Heath on Equitable's common law contribution and indemnity claims.